UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:22-cv-07586-CAS | Date | May 22, 2023 |
|---|---|---|---|
| Title | ALFREDO RAMON CERDA v. W. Z. JENKINS ET AL. | | |

Present: The Honorable   **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:
David Menninger, DFPD

Attorneys Present for Defendants:
John Lulejian, AUSA

Interpreter Present for Plaintiff:
Javier Villalobos

**Proceedings:**   ZOOM HEARING RE: PETITIONER'S MOTION TO ORDER COMPETENCY HEARING (Dkt. 18, filed on April 7, 2023)

## I.   INTRODUCTION AND BACKGROUND

Presently before the Court is petitioner's motion requesting that the Court order a competency hearing.

On October 18, 2022, petitioner filed a habeas corpus petition, seeking the overturn of the order certifying his extradition to Mexico. Dkt. 1. In or about January 2016, Mexico issued an arrest warrant for petitioner, and on November 23, 2020, presented an extradition request to the United States. Mexico seeks extradition on the basis that petitioner has been charged with (1) statutory rape as defined in Article 177 of the Criminal Code of the State of Baja California, Mexico, and (2) aggravated sexual abuse against someone younger than 14, in violation of Articles 180 Bis and 180 Ter, Section II of the Criminal Code of the State of Baja California.[1] The United States filed its complaint for an arrest warrant and extradition on September 9, 2021. Petitioner made his initial appearance on November 19, 2021. After a full briefing from the parties and a hearing, the magistrate judge certified the U.S. government's extradition request. Dkt. 10 at 9.

---

[1] For purposes of the instant motion, petitioner does not dispute that charges of statutory rape and aggravated sexual abuse are criminalized in both the United States and Mexico.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-07586-CAS | Date | May 22, 2023 |
| Title | ALFREDO RAMON CERDA v. W. Z. JENKINS ET AL. | | |

On April 7, 2023, petitioner filed the instant motion. Dkt. 18 ("Mot."). On May 1, 2023, respondents W. Z. Jenkins and David M. Singer (collectively, "respondents") filed an opposition. Dkt. 20 ("Opp."). On May 8, 2023, petitioner filed a reply. Dkt. 21 ("Reply").

On May 22, 2023, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. LEGAL STANDARD

" 'Extradition is a matter of foreign policy,' a diplomatic process over which the judiciary provides 'limited' review." United States v. Knotek, 925 F.3d 1118, 1124 (9th Cir. 2019) (quoting Vo v. Benov, 447 F.3d 1235, 1237, 1240 (9th Cir. 2006)). This Court is limited to considering whether:

> (1) the extradition magistrate had jurisdiction over the individual sought, (2) the treaty was in force and the accused's alleged offense fell within the treaty's terms, and (3) there is "any competent evidence" supporting the probable cause determination of the magistrate.

Santos v. Thomas, 830 F.3d 987, 1001 (9th Cir. 2016) (quoting Vo, 447 F.3d at 1240).

"Extradition law is generally governed by a combination of treaty law, federal statutes, and judicial doctrines dating back to the late nineteenth century." Knotek, 925 F.3d at 1125. "The question of whether an offense is extraditable involves determining: (1) whether it is listed as an extraditable crime in the relevant treaty; (2) whether the alleged conduct is criminalized in both countries; and, (3) whether the offenses in both countries are substantially analogous." Id.

## III. DISCUSSION

Petitioner requests that the Court stay the proceedings in this case and hold a hearing to determine whether petitioner is competent to stand trial. Petitioner's position is that he is not competent to stand trial and accordingly cannot be extradited. In support of his contention, petitioner argues that Article II of the U.S.-Mexico Extradition Treaty limits extraditable offenses to "acts [that] are punishable in accordance with the laws of both Contracting Parties." U.S.-Mexico Extradition Treaty, Art. 2(1), May 4, 1978.3. According to petitioner, because "United States law prevents the trial of--and, therefore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:22-cv-07586-CAS | Date | May 22, 2023 |
|---|---|---|---|
| Title | ALFREDO RAMON CERDA v. W. Z. JENKINS ET AL. | | |

the imposition of criminal punishment upon--a person who is incompetent to stand trial," an act committed by a defendant incompetent to stand trial is not "punishable" as required by the text of the extradition treaty.  Mot. at 3.

In opposition, respondents argue that petitioner attempts to circumvent the Ninth Circuit's opinion in Lopez-Smith v. Hood, which held that the U.S. Constitution's requirement that a criminal defendant be competent to stand trial is not applicable to extradition proceedings.  Opp. at 3; see also Lopez-Smith v. Hood, 121 F.3d 1322, 1325 (9th Cir. 1997) ("Application of the ordinary procedures for persons incompetent to stand trial would interfere with the President's power to honor extradition treaties by delivering to their custody persons charged in foreign countries with crimes.").  Respondents note that while Lopez-Smith v. Hood did not directly cite the treaty provision relied on by petitioner, the Ninth Circuit in that case nonetheless affirmed extradition to Mexico with the same extradition treaty in force.  Id. at 4.

Additionally, respondents contend that the determination of whether an offense is extraditable does not require a showing that the accused individual is competent to stand trial.  Respondents argue that Article II's requirement that extraditable offenses must be "acts [that] are punishable by in accordance with the laws of both Contracting Parties" refers to the dual criminality requirement of extradition.  Id. at 5.  According to respondents, "to satisfy this clause . . . the acts for which the fugitive is sought simply must constitute offenses in both the United States [and] Mexico."  Id.  Respondents argue that "it is not the extradition court's role to evaluate whether the fugitive will be convicted of the alleged offenses . . . [i]t is simply enough that both the requesting and requested jurisdictions have laws that address the same conduct."  Id. at 6.; see also id. at 5 (quoting Clarey v. Gregg, 138 F.3d 764, 765 (9th Cir. 1998) ("The primary focus of dual criminality has always been on the conduct charged . . . .")).  Respondents contend that competency of an accused defendant is accordingly an issue reserved for the courts in the country requesting extradition to decide.

In reply, petitioner argues that Lopez-Smith is not applicable because the "Ninth Circuit did not directly address the terms of the U.S.-Mexico extradition treaty in its decision."  Reply at 2 (quoting Opp. at 6).  Petitioner contends that respondents' opposition ignores a plain text interpretation of the treaty, which the Supreme Court set forth in Medillin v. Texas as the primary interpretive method for applying international treaties.  Id. (citing 552 U.S. 491, 506 (2008)).  Here, the relevant provision of the extradition treaty between the United States and Mexico limits extraditable offenses to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:22-cv-07586-CAS | Date | May 22, 2023 |
|---|---|---|---|
| Title | ALFREDO RAMON CERDA v. W. Z. JENKINS ET AL. | | |

"acts [that] are *punishable* in accordance with the laws of both Contracting Parties." According to petitioner, "because the U.S. Constitution prohibits the imposition of *punishment* of an incompetent defendant . . . an incompetent defendant cannot be extradited under Article II" of the treaty." Id. (emphasis added).

The Court concludes that U.S.-Mexico Extradition Treaty does not require a competency hearing before a U.S. court may certify an individual for extradition to Mexico. First, the Court finds that Lopez-Smith forecloses petitioner's argument that "because the U.S. Constitution prohibits the imposition of punishment of an incompetent defendant . . . an incompetent defendant cannot be extradited under Article II" of the treaty." Petitioner acknowledges that Lopez-Smith, which concerned an extradition from the United States to Mexico, addressed whether "the Fifth Amendment's Due Process clause prevented the extradition proceedings of a person found incompetent." Mot. at 4. In Lopez-Smith, the Ninth Circuit held that the Due Process clause does not prevent extradition on the basis of incompetency, which is determined by the requesting jurisdiction. See 121 F.3d at 1324 (quoting Kamrin v. United States, 725 F.2d 1225, 1228 (9th Cir. 1984)) ("United States due process rights cannot be extended extraterritorially."); see also id. at 1324-25 (citing Charlton v. Kelly, 229 U.S. 447 (1913) ("[Incompetency to stand trial] is an objection which should be taken before or at the time of his trial for the crime, and heard by the court having jurisdiction of the crime.")). Thus, while the Ninth Circuit did not specifically cite to the treaty provision cited by petitioner, its holding in Lopez-Smith still controls the outcome here.

Second, even if Lopez-Smith were not applicable to petitioner's argument arising from the text of the treaty, the Court nonetheless concludes that the plain text of the treaty does not support petitioner's request. As a threshold matter, the treaty provides that "[e]xtradition shall take place, subject to this Treaty, for wilful [sic] acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties." The plain text of Article II makes no reference to competency to stand trial. On the contrary, the sole focus of the provision is on the nature of the "*acts*" committed. Thus, whether someone may be extradited pursuant to this treaty provision turns upon the alleged conduct committed and not the individual's status.

The plain text of Article II aligns with the longstanding extradition doctrine of "dual criminality," which petitioner claims without support is irrelevant. As set forth above, the "question of whether an offense is extraditable involves determining: (1) whether it is listed as an extraditable crime in the relevant treaty; (2) whether the alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:22-cv-07586-CAS | Date | May 22, 2023 |
|---|---|---|---|
| Title | ALFREDO RAMON CERDA v. W. Z. JENKINS ET AL. | | |

conduct is criminalized in both countries; and (3) whether the offenses in both countries are substantially analogous." The inquiry for extradition is not to make the final determination on the merits as to whether an accused defendant should be convicted of the offense. Santos v. Thomas, 830 F.3d at 991; Neely v. Henkel, 180 U.S. 109, 123 (1901). Rather, the Supreme Court has long held, "It is enough if the particular act charged is criminal in both jurisdictions." Collins v. Loisel, 259 U.S. 309, 312 (1922).

Ultimately, petitioner's argument requests the Court read into the treaty text an additional requirement that persons to be extradited must be competent to stand trial.[2] The United States and Mexico could have agreed to and drafted such a provision, but they did not. Accordingly, petitioner's motion must be denied.

### IV.  CONCLUSION

In accordance with the foregoing, the Court **DENIES** petitioner's motion.

IT IS SO ORDERED.

|  | 00 : 30 |
|---|---|
| Initials of Preparer | CMJ |

---

[2] At oral argument, counsel for petitioner contended that nothing prevents the Court from ordering a competency hearing for the purposes of developing a full record. However, in light of the fact that that extradition is a "diplomatic process over which the judiciary provides limited review," the Court concludes that it would not be appropriate to order a competency hearing at this time. Knotek, 925 F.3d at 1124; see also Lopez-Smith, 121 F.3d at 1325 ("It would not make sense to commit him until he was fit to stand trial, under 18 U.S.C. § 4241(d)(2)(A), because the United States would never try him. Nor would it make sense to hospitalize him in the United States until his release would no longer create a substantial risk of injury to persons to damage to property, under 18 U.S.C. § 4246, because that would entirely ignore the right of another country to try him.").